Furnari, J.
This is an action in contract and in quantum meruit to recover the value of security services provided by the plaintiff at a condominium project on Trask Lane in Beverly, Massachusetts. The Trask Lane realty and the condominium buildings *62 located thereon were purchased, developed, constructed and controlled by defendants Frederick H. Baldwin, Jr. (“Baldwin”) and Robert P. Sullivan (“Sullivan”) operating under the auspices of the Kingswood Realty Trust and the Folly Hill limited Partnership.
Two separate reports were submitted to this Division by the trial justice. The defendants claim to be aggrieved in Report B by the court's substantíve general finding and judgment which imposed individual liability on them for the plaintiffs contract claim. In Report A, the plaintiff charges error in the trial court’s procedural ruling that the defendants’ Dist/Mun. Cts. R. Civ. P., Rule 64 draft report was timely filed.
1. There is no merit to the plaintiffs contention that the defendants forfeited their right to appellate review by this Division by Ming to comply with Rule 64 (c) (1) filing time requirements. Report A is, accordingly, dismissed.
The docket indicates that the trial of this matter was concluded on June 19,1990, and that judgment was entered on Friday, August 24,1990. Notice of judgment, however, was not mailed by the trial court clerk until September 4,1990 and not received by the defendant's until September 5,1990.
On Tuesday, September 11,1990'the defendants filed a request for a report, a draft report and a motion for an extension of time to file the same. The trial court allowed the defendants' motion on October 9,1990, ruling that “the request for extension was within 20 days from judgment.” See Locke v. Slater, 387 Mass. 682.
The initial period of ten days from the entry of judgment mandated by Dist/Mun. Cts. R. Civ. P., Rule 64(c) (1) for the filing of draft reports, see, e.g. Canty v. Canty, 1983 Mass. App. Div. 171, expired in this case on Tuesday, September 4,1990.[3] The defendants’ subsequent draft report filing was proper pursuant to that portion of Rule 64(c) (1) (ii) which provides:
Upon a showing Of excusable neglect the trial court may extend the time for filing ... for a period not to exceed ten days from the expiration of the time otherwise prescribed by thisrule. Such an extension may be granted before or after the time otherwise prescribed by this rule has expired....
Amotion for an extension of time for draftreportfilingis addressed to the discretion of the trial justice. Federal Deposit Ins. Corp. v. Daniel, 1984 Mass. App. Div. 98. No abuse of that discretion attended the trial court’s allowance of the defendants’ motion herein. Both the motion and the defendants’ draft report were filed within the second ten day filing period spedfiedia Rule 64(c) (1) (ii), and; the motion was properly based on grounds cognizable under the Rule. The plaintiffs argument that the trial court’s action on the motion was error because undertaken on October 9,1990, forty-six (46) days after entry of judgment, was erroneous. Thedefendants’ draft report was already on file at the time the motion was allowed; Rule 64(c) (1) (ii) expressly governs the time for filing draft reports rather than the time for disposition of extension motions.
2.There was also no error in the trial court’s judgmentfor the plaintiff uponafmding of the defendants’ individual liability herein. An analysis of the limited issues preserved for review and posited by the defendants in Report B requires a brief summary of the actual roles played by the individual defendants under trust and partnership rubrics and in their transaction with the plaintiff during the condominium project development
By a 1972 Declaration of Trust, Baldwin and Sullivan established the Kingswood Realty Trust (“Kingswood”) naming family members Ellen P. Baldwin and Susan A. Sullivan as sole beneficiaries and designating themselves as trustees. They invested themselves with broad powers to hold, manage and dispose of real and personal property and “to do all other acts or things which an owner of real property can do.” *63 The Declaration was amended in 1981 by the Baldwins and Sullivans to empower trustees Baldwin and Sullivan to assign, transfer and convey personal property to secure loans, and to lend money with or without security “in their uncontrolled discretion.”
Baldwin and Sullivan thereafter formed, as general partners, the Folly Hill limited Partnership (“Folly Hill”) for the purpose of purchasing a 5.8 acre parcel of realty on Trask Lane and of constructing two condominium buildings on the site.
In 1984, a written “owner-contractor agreement” was executed by the defendants to designate Kingswood as thegeneral contractor for the development ofthe Folly Hill condominium project The agreement was signed by Baldwin and Sullivan as general partners for owner Folly Hill and by Baldwin and Sullivan as trustees for contractor Kingswood. Baldwin became the managing general partner responsible for supervising Kingswood and for overseeing the construction, subletting and administration of the defendants’ project
On August 21,1985, the plaintiff submitted a written proposal to Kingswood to provide security services at “Folly Condominiums” on Trask line. Baldwin accepted and signed the proposal thereby authorizing the plaintiff to perform the specified services. No designation of a special capacity for Baldwin as Kingswood trustee, Folly Hill general partner or condominium project manager accompanied his signature. The contract did not reference the trust instrument
The plaintiff rendered security services at the Trask Lane sate for approximately eighteen (18) months at a total contract price of $55,037.58. An unpaid balance of $23,561.92 for these services remains due and owing to the plaintiff.
Judgment in the amount of $23,561.92was entered for the plaintiff against Baldwin and Sullivan individually as partners of Folly Hill and against Baldwin as trustee of Kingswood. The trial court’s written findings of fact indicated, inter alia, that Baldwin acted as an agent for Kingswood and for Folly Hill; and that the plaintiff had rendered security services in accordance with the terms of the agreement in a good and workmanlike manner.
2A The defendants claim to be aggrieved in Draft Report B by the trial court’s ultimate finding in this case, and by an alleged inconsistency between the court’s rulings on defendants’ Rule 64(b) requests and the court’s subsidiaiy findings. The defendants have effectively waived appellate consideration of any alleged inconsistency by failing to file a post-judgment motion to correct the same or for a new trial. Cook v. Kozlowski, 351 Mass. 708 (1967); Aliberti v. Acton Concord Chevrolet, Inc., 1983 Mass. App. Div. 95,97. The defendants also Med to file a specific Rule 64(b) request for ruling to test the sufficiency of the evidence to permit afindingfor the plaintiff, and are thus not entitled to apellate review of that legal issue. Reid v. Doherty, 273 Mass. 388, 389 (1930); Maccarone v. Phillips, 1986 Mass. App. Div. 17, 19. Further, findings of fact cannot per se serve as the basis of an appeal, and a simple charge of error in a general finding ordinarily presents no question of law for appellate review. Stella v. Curtis, 348 Mass. 458, 467 (1965); Stowell v. H.P. Hood, 288 Mass. 555, 557 (1934). As the defendants’ Rule 64(b) requests for rulings were allowed, but rendered partially immaterial by the trial court’s subsidiary findings, the limited question for appellate review in Report B is whether the court’s findings were “clearly erroneous.” See Norton v. West, 8 Mass. App. Ct. 348, 350 (1979).
2B. The validity of the court’s determination of Baldwin’s liability as Kingswood trustee for the plaintiff’s claim is clear. Prior to the 1978enactment of G.Lc. 203, §14A, the general rule was that “in the absence of a stipulation to the contrary, a trustee is personally liable in an action on a contract made by him for the benefit of the trust estate.” Dolben v. Gleason, 292 Mass. 511, 513 (1985). Section 14A, which embodies current law, states:
Unless otherwise provided in the contract, a trustee shall not be personally liable on contracts properly entered into in his fiduciary capacity in the course of administration of the trust estate unless he Med to reveal his representative *64 capacity and identify the trust estate in the contract A trustee shall be personally liable for obligations arising from the ownership or control of property of the trust estate or for torts committed in the course of administration of the trust estate only if he was personally at fault.
Even assuming arguendo that (a) Baldwin's acceptance and signature of the plaintiffs proposal was the execution of a contract in the “course of the administration of the trust estate” rather than in furtherance of Folly Hill’s interests as condominium owner and (b) the mere single reference to Kingswood in the “submitted to” section of the plaintiffs proposal was a sufficient identification of the trust estate in the parties’ contract, Baldwin was still not entitled to claim the statutory exemption from trustee personal liability created by the first portion of Section 14A. There is not a scintilla of evidence in this case that Baldwin revealed his representative capacity as trustee to the plaintiff on the face of the contract or at any time in the course of their dealings.
Second, it has been established that the protection afforded by Section 14A is not applicable to the trustees of “nominee trusts” created primarily for the purpose of holdingreal estate or conducting business wherein trustees are deemed mere “agents for the principals’ convenience rather than as trustees in the more familiar fiduciary sense.” Apahouser Lock & Security Corp. v. Carvelli, 26 Mass. App. Ct. 385, 388 (1988). The insulation from personal liability created by Section 14A covers
a trustee acting under a trust of the donative type associated with probate practice, rather than a trustee of an organization conducting a business which the trustee as an individual controls... [or] who are trustees for themselves in the conduct of business affairs....
Id. at 388. The only reasonable inference to be drawn from the facts in this case is that Kingswood, as created and administered by Baldwin and Sullivan, was a “nominee trust” excluded from the trustee protection afforded by Section 14A. The formal designation in the trust declaration of beneficial ownership in Baldwin and Sullivan family members does not alone render inapposite the Apahousernlie given Baldwin’s , and Sullivan’s unfettered control of Kingswood,[4] the inextricable intermingling of the activities of Kingswood and Folly Hill, and the identity of the business purposes, interests and pursuits of Kingswood, Folly Hill and the individual defendants.
2C. The trial court’s proper finding that Baldwin could not rely on his status as Kingswood trustee to escape personal liability for the plaintiffs claim did not signify that Baldwin was alone answerable to the plaintiff as Kingswood trustee or otherwise, or that the plaintiff contracted exclusively with Kingswood. The trial court also found that Baldwin and Sullivan were jointly and severally liable to the plaintiff as general partners of Folly Hill. As the defendants failed to request a ruling testing the sufficiency of the evidence to permit the court’s second finding, such finding must stand unless clearly erroneous. We hold that the trial court’s second finding is easily sustained upon a reasonable view of the reported evidence and all rational inferences drawn therefrom.
Although the plaintiffs proposal was submitted to Kingswood, a trust is not an independentlegalpersonality. Larson v. Sylvester, 282 Mass. 352, 357 (1933); Dunphy & Craig, Inc. v. Keith, 52 Mass. App. Dec. 150, 158 (1973). The proposal covered security services at the condominium site, and was accepted and signed by Baldwin with no designation of his execution of the contract in a particular capacity. Folly Hill owned the condominium concern in question, and Baldwin was designated the managing partner or agent of Folly Hill for both the development of this project and *65 the supervision of Kingswood as contractor. The agreement with the plaintiff for security services at the condominium site was one clearly within the scope of the business of the partnership which had been formed for the specific purpose of buying and developing the Trask Lane realty. Neville v. Gifford, 242 Mass. 124 (1922). His individual signature and acceptance of the plaintiffs proposal rendered both Baldwin and his general partner Sullivan liable for the services provided by the plaintiff.
3. There being no error in the trial court’s procedural or substantive rulings and findings, the court’s judgment for the plaintiff is affirmed. Reports A and B are hereby dismissed.

 The actual tenth day from entry of judgment, Monday, September 3,1990, was Labor Day, alegalholiday in this Commonwealth. See Dist/Mun. Cts. R. Civ. P., Rule 4(a) and G.Lc. 4, §7.

 This argument finds support in the legislative intent manifest in the second provision of G.Lc. 203, §14A (not herein applicable) which mandates that “ [a] trustee shall be personally liable for obligations arising from the ownership or control of property of the trust estate... (emphasis supplied).” The Legislative utilization of the disjunctive “or” establishes that control alone, unaccompanied by beneficial interest, is sufficient for the imposition of liability on a trustee.